IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

————————————————————————

JOHN DOE and JANE DOE,

               Plaintiffs,

                                 Civ. Action No.
                                 6:06-CV-1045 (DEP)

    vs.

PATRICK W. KAISER, *et al.,*

               Defendants.

————————————————————————

APPEARANCES:             OF COUNSEL:

FOR PLAINTIFFS:

MENKIN LAW FIRM        EDWARD Z. MENKIN, ESQ.
State Tower Bldg., Suite 909
109 South Warren St.
Syracuse, NY 13202

FOR DEFENDANTS:

PIEMONTE LAW FIRM      SALVATORE J. PIEMONTE, ESQ.
P.O. Box 265
Syracuse, NY 13031

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

<u>DECISION AND ORDER</u>

    Plaintiffs John and Jane Doe, a married couple suing under those

pseudonyms to shield them from undue embarrassment, have

Dockets.Justia.com

commenced this action to redress privacy violations stemming from defendant Patrick W. Kaiser's alleged unauthorized electronic surveillance of them at premises leased from him and occupied as their residence. In their complaint, plaintiffs allege that their rights under governing federal eavesdropping statutes were violated, and additionally assert pendent state law claims against both Kaiser and D.P. Electric, an electrical contractor purportedly responsible for installation of the invasive paraphernalia, sounding in intentional infliction of emotional distress ("IIED") and negligence.

Having previously granted plaintiffs summary judgment in their favor against Kaiser on the issue of liability on the eavesdropping statute on which their federal claim is predicated, but having found triable issues of fact surrounding their pendent state law claim for intentional infliction of emotional distress, I conducted a bench trial to address the remaining issues in the case, including the question of damages.[1]  Based upon a careful consideration of the testimony and evidence adduced during that trial, I find that the plaintiffs are entitled to recover their actual damages,

---

[1]    In their summary judgment motion plaintiffs did not seek summary judgment with respect to their negligence cause of action, which is asserted only against defendant D.P. Electric.

including for mental anguish and emotional distress, both on their federal

claim and, in the case of plaintiff Jane Doe, on her pendent state law claim

against defendant Kaiser, and additionally find it appropriate to award

them punitive damages as well as litigation costs and attorneys' fees

associated with the action.  The following constitutes findings of fact and

conclusions of law supporting the court's verdict.

I.      BACKGROUND

Plaintiffs John and Jane Doe have been married since October of

2002, and currently reside together with their two-year-old son in a suburb

of Oneida, New York.  The Does were born and raised in the Central New

York region, and have many family members and friends still residing

within the area.

Both of the Does are highly educated; John has achieved a master's

degree in public administration, and Jane possesses a bachelor's degree

in business management.  John Doe is engaged in the field of law

enforcement, having been a police officer with the Oneida City Police

Department from March, 1998 until January of 2007, when he became an

investigator with the New York State Bureau of Narcotics.  Plaintiff Jane

Doe has been employed for seven years in a position involving software

sales coordination.

Prior to October of 2003, plaintiffs resided in a seventeen hundred square foot, one bedroom, one bathroom apartment located at 542 Seneca Street in Oneida, New York. The building in which that apartment is located was purchased by defendant Patrick W. Kaiser in or about July of 2002, at a time when the Does were already residing in their leased apartment.

Subsequent to Kaiser's purchase of the building, and extending beyond the time when they moved out of their apartment, the Does maintained a somewhat close acquaintenship with Kaiser.[2] As the Does became more familiar with Kaiser, they begin to utilize his services as an electrician and to recommend him for work in the homes of other friends and relatives as well as at plaintiff Jane Doe's place of business. When the Does acquired their present residence, they engaged Kaiser to perform various electrical work at the premises.

During the period extending from at least August 11, 2003 through October of 2003, when the Does vacated the premises, defendant Kaiser, utilizing a micro-cam video camera and transmission and recording

---

[2]     The defendant, a retired firefighter, was known to John Doe in a professional capacity prior to Kaiser's acquisition of the building.

system installed by him in the bedroom closet doorway of their apartment, intercepted and, in some instances, recorded plaintiffs' visual images and conversations occurring within the residence, including some of their most private and intimate moments.[3]  The Does were unaware of Kaiser's surveillance of their apartment bedroom until some three years later, when reports of his activity first surfaced.

A complaint was filed with the Oneida City Police Department in or about July of 2006 regarding alleged unlawful surveillance activities on the part of defendant Kaiser.  Plaintiff John Doe was on duty at the time the complaint was registered and, while not immediately aware of or involved in the investigation of that complaint, was briefed during his shift regarding its particulars.[4]  Officers from the Oneida City Police Department, including two investigators with whom plaintiff John Doe worked, were assigned to conduct an investigation into the matter.

The investigation subsequently conducted disclosed that defendant

---

[3]     Plaintiffs have been unable to establish precisely when the surveillance system was installed, and for how long prior to August 11, 2003 it was operational. The significance of that date, it was revealed at trial, is that the state criminal statute under which Kaiser was criminally prosecuted for his unlawful surveillance activities became effective then.

[4]     When they first learned of the allegations, plaintiffs assumed that because of their good relationship with defendant Kaiser they had not been surveiled by him, and therefore would not be involved in the investigation.

Kaiser had in fact installed video recording equipment in the apartment occupied by the Does, and retained in his possession twelve videotapes which included recordings created through his surreptitious surveillance. It was also determined that there were a total of eight victims of the defendant's criminal conduct, all at various times residents of the 542 Seneca Street apartment, including John and Jane Doe, whose images and voices appear on some of the tapes confiscated from defendant Kaiser.  On July 23, 2006, after having been apprised of and waiving his constitutional *Miranda* rights,[5] Kaiser gave a full statement acknowledging his unlawful surveillance of tenants through the use of microcams installed by him throughout the apartment, and the recording of various of his victims particularly when engaged in sexual activity or "less than fully attired."[6]

Defendant Kaiser was indicted in connection with these surveillance activities and charged with eight counts of unlawful surveillance in the second degree – four in violation of N.Y. Penal Law § 250.45(1), and four

---

[5]    *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602 (1966).

[6]    After the Does moved out of Kaiser's apartment, as part of a renovation project he installed additional imaging devices including two hidden in molding in the living room, two located behind molding in the bedroom, another placed in a portable alarm clock located on the night stand in the bedroom, and yet another positioned in the wall of the bathroom aimed toward the sink and shower area.

under N.Y. Penal Law § 250.45(2).[7]  Among the four victims, whose true

identities are not revealed in that indictment, were John and Jane Doe.

A non-jury trial was conducted on December 21, 2006 before

Madison County Court Judge Biagio J. Di Stefano in connection with the

charges set forth in the indictment.  Based upon the evidence adduced,

---

[7]    The relevant provisions of New York Penal Law provide that

[a] person is guilty of unlawful surveillance in the second degree when:

1.  For his or own, or another person's amusement, entertainment, or profit, or for the purpose of degrading or abusing a person, he or she intentionally uses or installs, or permits the utilization or installation of an imaging device to surreptitiously view, broadcast, or record a person dressing or undressing or the sexual or other intimate parts of such person at a place and time when such person has a reasonable expectation of privacy, without such person's knowledge or consent; or

2.  For his or her own, or another person's sexual arousal or sexual gratification, he or she intentionally uses or installs, or permits the utilization or installation of an imaging device to surreptitiously view, broadcast, or record a person dressing or undressing or the sexual or other intimate parts of such person at a place and time when such person has a reasonable expectation of privacy, without such person's knowledge or consent;. . . .

N.Y. Penal Law § 250.45.  Various terms utilized in those provisions, including "imaging device", are defined in N.Y. Penal Law § 250.40.

comprised principally of a stipulated set of facts, Judge Di Stefano found

Kaiser guilty of the charges set forth in counts one, three, five and seven

of the indictment, alleging violation of N.Y. Penal Law § 250.45(1), but

acquitted him of the remaining charges, brought under section 250.45(2),

finding insufficient evidence to demonstrate that the captured

transmissions were used or intended for Kaiser's sexual arousal or sexual

gratification.

The impact of the revelation of defendant Kaiser's surreptitious

surveillance activities upon the Does has been devastating.  Despite the

fact that their identities were never publicly disclosed, as a result of the

media reports of Kaiser's prosecution and the fact that Oneida is a small

community, with many local residents having been aware of where the

Does resided at the relevant times, plaintiffs were approached by many

family members and friends inquiring as to whether they had been

victimized by Kaiser's conduct.  The embarrassment experienced by the

Does was exacerbated by the fact that John Doe's work colleagues

conducted the investigation into the matter.

The dramatic effects of the incident on the Does have been

lingering, particularly with regard to Jane Doe, who testified to feeling like

she has been raped and violated as a result of the surveillance.  Kaiser's
actions have adversely affected the Does' relationship.  Jane Doe testified
that because of Kaiser's conduct, she and her husband have been
deprived of their intimacy.

As a result of the incident and its ongoing effects, aggravated further
by the residual fear that when performing electrical work in the Does' new
home defendant Kaiser may have installed similar recording surveillance
devices, plaintiff Jane Doe has sought counseling from three separate
sources, including Dr. Alvarez, whom she stopped seeing after realizing
that she had worked with her daughter; Paul Wenham, a licensed clinical
social worker ("CSW") employed by Oneida/Madison Counties Catholic
Charities; and Kathleen J. Caezza, also a licensed CSW who plaintiff
initially saw weekly but is now seeing biweekly as a result of the limitations
imposed by her health insurance carrier.  In reports of that counseling,
plaintiff Jane Doe is described as suffering from post traumatic stress
disorder ("PTSD") as a result of the privacy violation which occurred in her
home.   In addition to the tension experienced in the Does' marital
relationship, in their reports both CSWs describe the trauma experienced
by Jane Doe as a result of the incident as recurring and ongoing, causing

her to lose concentration and be "very irritable and hypervigilant".  As Jane Doe testified, there is literally not a day that goes by without her thinking of and reliving the incident.

As for plaintiff John Doe, while he has not required counseling to address the effects of Kaiser's actions, he too has experienced embarrassment associated with the incident, and confirmed that it has had a negative effect on his wife and on the couple's marital relationship. Plaintiff John Doe testified to the embarrassment and humiliation experienced by him over the fact that despite having sworn as a law enforcement officer to protect the public, he was unable to protect his wife against defendant Kaiser's conduct.

In addition to the anxiety, mental anguish and emotional distress suffered by both plaintiffs as a result of defendant Kaiser's actions, they have incurred out-of-pocket expenses, beyond those associated with the commencement of this litigation, as a direct consequence of Kaiser's actions.  Of those costs, which do not include additional expenses incurred for medication required to address plaintiff Jane Doe's emotional condition, a total of $462 represents the direct expense to the plaintiffs of securing needed psychological counseling for Jane Doe.

II.    PROCEDURAL HISTORY

Plaintiffs commenced this action on August 29, 2006.  Dkt. No. 1.

Their complaint, which names as defendants both Kaiser and D.P.

Electric, described as "a business entity and partnership owned, in part, by

the Defendant Patrick Kaiser and located in Oneida, New York[,]" asserts

two claims under 18 U.S.C. §§ 2511(1)(a) and 2520, one each on behalf

of plaintiff John Doe and plaintiff Jane Doe, as well as parallel pendent

state law claims of intentional infliction of emotional distress on behalf of

the two plaintiffs, and a fifth cause of action alleging negligence against

defendant D.P. Electric.[8]  *Id.*

Following the joinder of issue, plaintiffs moved on January 17, 2007

for the entry of partial summary judgment finding liability on the part of

defendant Kaiser with respect to the claims set forth in plaintiffs'

complaint, as a matter of law.  Dkt. No. 14.  Addressing that motion, I

issued a decision and order dated May 2, 2007, granting them the relief

sought, in part, concluding that plaintiffs had established defendant's

---

[8]    At the outset of the trial, the parties stipulated to voluntary dismissal of
the plaintiffs' claims against defendant D.P. Electric pursuant to Rule 41(a) of the
Federal Rules of Civil Procedure.

11

liability on the federal claims asserted in their complaint.[9]  The portion of

plaintiffs' motion addressing the pendent state law causes of action was

denied, however, based upon my finding of the existence of triable issues

of fact surrounding those claims.

A non-jury trial was convened on June 18, 2007 to address the

remaining issues in the case.   At trial, testimony was offered by the two

plaintiffs as well as Donald Cerio, Esq., the Madison County District

Attorney who prosecuted the criminal charges against defendant Kaiser.[10]

Also presented at the trial was a joint pretrial stipulation of the parties as

well as several exhibits, which were received into evidence principally

without objection from the defendant.  At the close of trial decision was

reserved in order to afford the parties an opportunity to submit further

briefings.

III.    DISCUSSION

A.    Actual Damages

Through its enactment of the Omnibus Crime Control and Safe

---

[9]      The matter is before me on consent of the parties, pursuant to 28 U.S.C.
§ 636(c).  *See* Dkt. No. 13.

[10]      Defendant Kaiser, who is currently a prison inmate as a result of his state
criminal conviction on the unlawful surveillance charges, was not present at the trial
but, through counsel, advised the court that he did not object to the trial going forward
in his absence.

Streets Act of 1968, P.L. 90-351, 82 Stat. 211-225, Congress authorized

victims of the unauthorized interception of oral communications, in

violation of 18 U.S.C. § 2511, to bring civil actions for recovery of

appropriate relief.  18 U.S.C. § 2520(a); *see Arias v. Mut. Cent. Alarm

Serv., Inc.*, 202 F.3d 553, 556-57 (2d Cir. 2000).  The remedies available

to a party who brings such an action can include

> (1) such preliminary and other equitable or
> declaratory relief as may be appropriate;
>
> (2) damages under subsection (c) and punitive
> damages in appropriate cases; and
>
> (3) a reasonable attorney's fee and other litigation
> costs reasonably incurred.

18 U.S.C. § 2520(b); *see DIRECTV, Inc. v. Sardone*, No. 03CIV4168,

2006 WL 162917, at *2 (S.D.N.Y. Jan. 19, 2006) (Ellis, M.J.), *adopted*, No.

03CIV4168, Dkt. No. 14 (Jan. 31, 2006) (Daniels, D.J.).  Subsection (c) of

that provision goes on to address the calculation of damages providing, in

relevant part, for recovery of statutory damages of either the greater of

one hundred dollars per day for each day of violation or $10,000, or

alternatively – if that amount is larger – the actual damages suffered by

the plaintiff and profits made by the defendant as a result of the violation.

18 U.S.C. § 2520(c)(2); *Romano v. Terdick*, 939 F. Supp. 144, 148-49 (D.

Conn. 1996); *see also DIRECTV, Inc. v. Cruz*, No. 03-CV-644, 2006 WL

3386774, at *2 n.1 (N.D.N.Y. Nov. 21, 2006) (Munson, S.J.).

The question of whether section 2520(c)(2) admits of an award of

damages for mental anguish and emotional distress in the case of an

unauthorized interception of oral communications, as an element of actual

damages recoverable under that section, appears to have been

specifically addressed by a court on only one occasion, owing perhaps to

the fact that the eavesdropping provisions to which section 2520 relates

cover a broad spectrum of conduct, and the statute seemingly has been

used infrequently to redress privacy violations of the nature now

presented.  The only reported case which has directly confronted the

question of whether damages for mental anguish are recoverable under

section 2520, involved the unlawful monitoring of telephone conversations

between a patient in a psychiatric hospital and her attorney.  *See Gerrard*

*v. Blackman*, 401 F. Supp. 1189 (N.D. Ill. 1975).  There the court,

addressing a dismissal motion, succinctly concluded that "if grave

emotional harm can be demonstrated by plaintiffs, they are entitled to

recover."  *Id*. at 1193.

A review of cases involving comparable violations of privacy

generally confirms that such damages are normally regarded as compensable. Generally speaking, in a right to privacy case the plaintiff can recover damages for "the harm to his interest in privacy resulting from the invasion." Restatement (Second) of Torts § 652H. A plaintiff in such an action can also recover for mental distress and any special damages. *Id.* Mental distress is a significant element of damages in such instances. *See, e.g., Wood v. Hustler Magazine*, 736 F.2d 1084, 1088 (5th Cir. 1984), *cert. denied*, 469 U.S. 1107, 105 S. Ct. 783 (1985); *Fairfield v. Am. Photocopy Equip. Co.*, 291 P.2d 194, 197 (1955). The difficulty of measuring damages for invasion of privacy is no reason for denying relief. W. Prosser, Law of Torts (4th ed. 1971). Damages in a privacy action "can be awarded in the same way in which general damages are given for defamation." *Nolley v. County of Erie*, 802 F. Supp. 898, 903 (W.D.N.Y. 1992) (quoting Restatement of Torts § 867, Comment d (1939)).

It should be noted that damages for emotional distress may not be presumed, and are not established simply by evidence of a defendant's egregious conduct. *Tanzini v. Marine Midland Bank*, 978 F. Supp. 70, 78 (N.D.N.Y. 1997) (McAvoy, C.J.); *see also Meacham v. Knolls Atomic Power*, 185 F. Supp. 2d 193, 220 (N.D.N.Y. 2002) (Homer, M.J.) (citing

15

*Tanzini*), *vacated on other grounds sub nom. KAPL, Inc. v. Meacham*, 544 U.S. 957, 125 S. Ct. 1731 (2005).  Such damages may be, however, established by the plaintiff's testimony alone.  *Meachum*, 185 F. Supp. 2d at 220.  In determining whether an award of damages for emotional distress is reasonable, the particular award must be determined by reference to verdicts in similar cases.  *See Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 424, 116 S. Ct. 2211, 2218 (1996).

In this instance I have looked for guidance principally from New York cases involving awards of damages for mental anguish and emotional distress in loosely analogous settings, as well as cases from other jurisdictions with more closely aligned fact patterns.  As the Second Circuit has noted, "New York cases vary widely in the amount of damages awarded for mental anguish."  *Meacham v. Knolls Atomic Power Laboratory,* 381 F.3d 56, 78 (2d Cir. 2004), *vacated on other grounds sub nom. KAPL, Inc. v. Meacham,* 544 U.S. 957, 125 S. Ct. 1731 (2005).  While many cases from New York courts, particularly older cases, have reflected appellate court reductions of such awards to $30,000 or below, "other cases uphold awards of more than $100,000 without discussion of protracted suffering, truly egregious conduct, or medical treatment."  *Id.*

16

(collecting cases). Federal courts in this circuit, applying New York law, have taken similarly ranging positions. *See, e.g., Distefano v. Long Island R.R. Co.,* No. 96 CV 5487, 1999 WL 1704784, at *8 (E.D.N.Y. Dec. 21, 1999) (reducing $7 million dollar jury damage award to include $125,000 for past pain and suffering in race and age employment discrimination action); *Courtney v. City of New York,* 20 F. Supp. 2d 655, 661-62 (S.D.N.Y. 1998) (reducing $139,000 compensatory damage award to $100,000 in employment discrimination action); *Shea v. Icelandair,* 925 F. Supp. 1014, 1029 (S.D.N.Y. 1996) (reducing jury award for emotional distress and age discrimination from $250,000 to $175,000); *New York City Transit Auth. v. State Div. of Human Rights,* 181 A.D.2d 891, 893-95, 581 N.Y.S.2d 426, 428-29 (2d Dep't 1992), *leave to appeal denied,* 80 N.Y.2d 762, 592 N.Y.S.2d 671 (1992) (approving an award of $450,000 in ongoing sexual harassment case where plaintiff suffered mental anguish over a period of six years).

Courts in other jurisdictions, particularly in cases involving similar privacy intrusions, have been more generous. *See, e.g. Loudermilk v. Moncla*, No. 04-CA-274 (Okaloosa Co., FLA) (2006) ($500,000 in past pain and suffering and $750,000 for future distress awarded in case of

17

videotaping of guests utilizing video equipment in the bathroom);
*Anonymous 23 Year Old Female v. McVittie,* No. 01-18487-NZ (Livingston
Co., MI) (2003) ($125,000 in damages for mental anguish and emotional
distress awarded to aspiring model secretly videotaped while changing
clothes at a modeling agency); *Tarby v. Kaufman,* No. CV 92-0110802S
(Conn. Superior Ct. 1997) ($360,000 awarded to victim of videotaping in
restroom).

In this case the extent of plaintiff's injuries, together with the flagrant
nature of defendant's conduct, warrant significant awards of damages for
mental anguish and emotional distress. The record plainly demonstrates
that both plaintiffs suffered considerable mental anguish and distress as a
result of defendant Kaiser's actions. In the case of plaintiff John Doe, the
emotional impact of his inability to protect his wife, coupled with the
embarrassment of working daily with officers tasked with investigating
defendant Kaiser's surveillance activities, and with unrestricted access to
tapes of surveillance of his activities with his wife in the most private
surroundings of their home, cannot be understated. Turning to plaintiff
Jane Doe, the record convincingly demonstrates the deep humiliation,
embarrassment and anxiety suffered by her, with lingering, residual effects

and requiring on-going care and treatment. Drawing upon comparable cases from New York and elsewhere for establishment of relevant guideposts, and based upon the circumstances proven at trial, I find that plaintiffs John and Jane Doe are entitled to recover compensatory damages for mental anguish and emotional distress, respectively, in the amounts of $50,000 and $150,000.[11]

In addition to damages for mental anguish and emotional distress, plaintiffs also seek recovery of out-of-pocket expenses incurred as a proximate result of defendant Kaiser's actions. Turning to this portion of plaintiff's actual damages claim, I find that the Does have proven to the court's satisfaction that they experienced out-of-pocket losses as a result of defendant's actions, principally associated with Jane Doe's psychological counseling, totaling $462.00. That amount will therefore be included in the court's damage award.

    2.    <u>IIED</u>

---

[11]    In light of these awards it is unnecessary to address the possibility of an alternative award of statutory damages. While neither the plaintiffs nor law enforcement officials have been able to discern exactly when defendant Kaiser installed the micro-cam equipment and began his surveillance of the Does, even assuming its installation when he purchased the property in 2002, from then until the Does vacated the premises at the end of October, 2002, a total of 487 days elapsed. Accordingly, even giving the plaintiffs the benefit of every inference, at best a corresponding statutory damage award of $48,700 to each plaintiff would result. *See* 18 U.S.C. §2520(c)(2)(B).

Under New York law, which is applicable in this instance, *see*

*Bender v. City of New York*, 78 F.3d 787, 790 (2d Cir. 1996), a party who

has been subjected to "'conduct . . . so outrageous in character, and so

extreme in degree, as to go beyond all possible bounds of decency, and to

be regarded as atrocious, and utterly intolerable in a civilized community'"

is entitled to prove a claim for intentional infliction of emotional distress.

*Murphy v. Am. Home Products Corp.*, 58 N.Y.2d 293, 303, 461 N.Y.S.2d

232, 236 (1983) (quoting Restatement (Second) of Torts § 46, subd. [1],

Comment d); *Fischer v. Maloney*, 43 N.Y.2d 553, 557-58, 402 N.Y.S.2d

991, 992-93 (1978) (acknowledging a cause of action for intentional

infliction of emotional distress in New York); *see also Bender*, 78 F.3d at

790.  To recover for intentional infliction of emotional distress, a plaintiff

must establish four distinct elements, including 1) extreme and outrageous

conduct; 2) intent to cause, or disregard of a substantial probability of

causing, severe emotional distress; 3) severe emotional distress; and 4) a

causal connection between the conduct and a cognizable injury.  *Howell v.

New York Post Co., Inc.*, 81 N.Y.2d 115, 121, 596 N.Y.S.2d 350, 353

(1993).

In my prior decision, I concluded as a matter of law that the first two

20

of these essential elements had been established, but found genuine, triable issues as to whether the plaintiffs could establish that they suffered severe of emotional distress and a nexus between defendant's conduct and a legally cognizable injury. I also noted that under New York law proof of severe psychological damage resulting from the conduct at question is an essential element of liability for intentional infliction of emotional distress, and not merely a factor to be considered in awarding damages. *See* Dkt. No. 17 at pp. 15-16, *citing Richard L. v. Armon,* 144 A.D.2d 1, 4, 536 N.Y.S.2d 1014, 1016 (2d Dep't 1989).

To establish that severe emotional distress has been endured, a plaintiff must support an IIED claim with medical evidence, rather than mere speculative or conclusory allegations. *See id., citing Cavallaro v. Pozzi*, 28 A.D.3d 1075, 1079, 814 N.Y.S.2d 462, 466 (4th Dep't 2006); *Walentas v. Johnes*, 257 A.D.2d 352, 353, 683 N.Y.S.2d 56, 58 (1st Dep't 1999); *Christenson v. Gutman*, 249 A.D.2d 805, 808-09, 671 N.Y.S.2d 835, 839 (3d Dep't 1998); *Leone v. Leewood Serv. Station, Inc.*, 212 A.D.2d 669, 672, 624 N.Y.S.2d 610, 613 (2d Dep't 1995); *see also Calhoun v. Mastec, Inc.*, No. 03-CV-386S, 2006 WL 2806452, at *9-10 (W.D.N.Y. Sept. 28, 2006). In this instance, the proof adduced at trial

included letter reports, admitted on stipulation of the defendant, from two

licensed CSWs revealing that plaintiff Jane Doe suffers from PTSD,

directly attributable to defendant Kaiser's conduct, and is engaged in

ongoing treatment for that condition.  Plaintiff Jane Doe has therefore

satisfied her obligation to provide the court with competent evidence to

support her claim for intentional infliction of emotional distress, and is

entitled to recover $150,000 to compensate her for the same mental

anguish and emotional distress at trial which was subject to the award

under section 2520(c).[12]  Plaintiff John Doe, on the other hand, did not

support his claim for intentional infliction of emotional distress with any

medical evidence, and thus is not entitled to recover under his pendent

state law claim.

### B.    Punitive Damages

In addition to recovery of actual damages, section 2520 authorizes

an award of punitive damages "in appropriate cases" for unlawful

---

[12]    Plaintiffs seek recovery for the same mental anguish and emotional distress, experienced as a result of Kaiser's conduct, under both section 2520 and in connection with their IIED claim. Obviously, while plaintiffs can recover the same damages under more than one theory, any resulting judgment may include that amount only once, since separate awards for the same amount would be duplicative, and thus improper.  *Indu Craft, Inc. v. Bank of Baroda*, 47 F.3d 490, 497 (2d Cir. 1995) ("A plaintiff seeking compensation for the same injury under different legal theories is of course only entitled to one recovery.") (citing *Wickham Contracting Co. v. Board of Educ.*, 715 F.2d 21, 28 (2d Cir. 1983)).

interception of oral communications."  18 U.S.C. § 2520(b)(2); *Sardone*,
2006 WL 162917, at *2.  While the statute itself does not specify a
standard to be applied, to determine whether such an award is warranted,
and if so, in what amount, courts interpreting this provision of the Omnibus
Crime Control and Safe Streets Act have generally considered whether a
plaintiff can prove "a wanton, reckless, or malicious violation" of the
statute.   *See, e.g., Smoot v. United Transp. Union*, 246 F.3d 633, 647
(6th Cir. 2001); *Schmidt v. Devino*, 206 F. Supp. 2d 301, 308 (D. Conn.
2001) (citing *Deal v. Spears*, 980 F.2d 1153, 1159 (8th Cir. 1992)).  This
standard is not materially different from that which ordinarily applies in
connection with awards of punitive damages.  *See Whitney v. Citibank,
N.A.*, 782 F.2d 1106, 1118 (2d Cir. 1986) (citing *Walker v. Sheldon*, 10
N.Y.2d 401, 404-05, 223 N.Y.S.2d 488, 490-91 (1961)) (indicating that
punitive damages are appropriately awarded in the event of a showing
that a defendant's actions were willful, wanton and maliciously committed);
*see also Luessenhop v. Clinton County, New York*, No. 04-CV-263, 1007
WL 1063650, at *9 (N.D.N.Y. Apr. 6, 2007) (Treece, M.J.); *Lambrinos v.
Exxon Mobil Corp.*, No. 00-CV-1734, 2004 WL 2202760, at *8 (N.D.N.Y.
Sept. 29, 2004) (Hurd, J.).

An award of punitive damages is intended to advance the important state interests of deterrence and retribution. *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 416, 123 S. Ct. 1513, 1519 (2003). The factors to be considered when awarding punitive damages include "(1) the degree of reprehensibility of the tortious conduct; (2) the ratio of punitive damages to compensatory damages; and (3) the difference between this remedy and the civil penalties authorized or imposed in comparable cases." *Lee v. Edwards,* 101 F.3d 805, 809 (2d Cir. 1996) (quoting *BMW of N. Am., Inc. v. Gore,* 517 U.S. 559, 575, 116 S. Ct. 1589 (1996)); *see also Patterson v. Balsamico,* 440 F.3d 104, 120 (2d Cir. 2006). In determining an appropriate amount to award in punitive damages, the court must look not only to the ratio between compensatory and punitive damages, but additionally the defendant's personal circumstances, particularly in view of the twin objectives of punishment and deterrence.[13]

---

[13]     Plaintiff has urged the court to consider, when awarding punitive damages, the fact that there are several other victims of plaintiff's misconduct. This argument, however, is significantly undercut by the Supreme Court's recent decision in *Philip Morris USA v. Williams*, __ U.S. __, 127 S. Ct. 1057 (2007), in which the Court expressly disapproved of the practice of increasing punitive damage awards to consider the effects of a defendant's conduct on other parties. *Philip Morris*, 127 S. Ct. at 1064. It should be noted, however, that even under *Phillip Morris,* the fact that defendant's misconduct was more widespread than that focused on a particular plaintiff nonetheless remains a relevant factor for consideration when awarding punitive damages. *Id.*

*Patterson,* 440 F.3d at 121-22.

When it comes to the defendant, very little is known concerning his personal financial circumstances.  Kaiser is apparently a retired firefighter, and has available to him a pension as a potential source of income.  It is unclear, however, whether Kaiser owns any other assets of significance, and plaintiffs offered no proof in this regard.

What is known of the defendant is that he is currently serving a prison sentence in connection with his surveillance activities.  Given this circumstance, the dual objectives of punishment and deterrence have largely been served, and the need to award punitive damages is of considerably diminished significance.  I do find, however, that an award of punitive damages in some amount is necessary in order to express the court's view regarding the reprehensibility of defendant's actions, and to deter others from similar conduct in the future.  Consequently, I find that an award of punitive damages, in the amount of $ 25,000 for each of the two plaintiffs, is appropriate.

C.    Costs and Attorneys' Fees

In addition to statutory and compensatory damages, section 2520 authorizes an award of litigation costs, including a reasonable attorneys'

25

fee, to a prevailing plaintiff as relief for a proven violation of section 2511.

18 U.S.C. § 2520(b)(3). While providing unspecific guidance regarding

the method to be employed in affixing a proper award, the statute gives no

reason to believe that the same general principles applicable in other

cases involving a fee shifting provision are not equally instructive in

determining what amount to award in costs and attorneys' fees to a

prevailing plaintiff under § 2520(b)(3). In deciding the amount of

attorneys' fees to award, I have therefore looked to the general principles

which ordinarily inform such a determination.

      1.   Attorneys' Fees

      The question of how much to award in costs and attorneys' fees is

one which rests with the sound discretion of the court. *Reed v. A.W.*

*Lawrence & Co., Inc.*, 95 F.3d 1170, 1183 (2d Cir. 1996). Until recently,

courts in this circuit applied a familiar two-step procedure for determining

the amount of a reasonable attorneys' fee in any particular case. *See*

*McKever v Vondollen*, 681 F. Supp. 999, 1002 (N.D.N.Y. 1988); *see also*

*Luciano v. Olsten Corp.*, 925 F. Supp. 956, 961-62 (E.D.N.Y. 1996), *aff'd*,

109 F.3d 111 (2d Cir. 1997). First, the court would establish a "lodestar"

figure by multiplying the number of reasonably expended hours by the

hourly rate customarily charged for similar litigation by attorneys of like

skill in the area.  *Cruz v. Local Union No. 3 of the Int'l Bhd. of Elec.*

*Workers*, 34 F.3d 1148, 1159 (2d Cir. 1994); *Luciano,* 925 F. Supp. at

961-62 (citing, *inter alia*, *Cruz*).  The court in its discretion could then

choose to adjust the lodestar figure, either increasing or decreasing it,

depending upon other factors such as novelty or complexity of the issues,

the level of skills required to perform the services, and the result

achieved.[14]  This two-step analysis was devised based on the

understanding that

> [t]he most useful starting point for determining the
> amount of a reasonable fee is the number of hours
> reasonably expended on the litigation multiplied by
> a reasonable hourly rate.  This calculation provides
> an objective basis on which to make an initial
> estimate of the value of a lawyer's services.

*Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S. Ct. 1933, 1939 (1983).  In

*Hensley*, the Supreme Court went on to note that in determining a proper

fee, the court should determine whether the plaintiff achieved "a level of

success that makes the hours reasonably expended a satisfactory basis

---

[14]    The twelve factors which courts have commonly articulated as potentially relevant to the fee issue are set forth in *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87, 91-96, 109 S. Ct. 939, 943-45 (1989), and in *Luciano,* 925 F. Supp. at 962.  Because plaintiff does not seek enhancement of the lodestar amount, those factors will not be recited.

for making a fee award[.]"  *Id.* at 434, 103 S. Ct. at 1940.

A panel of the Second Circuit, which included retired Supreme Court Justice Sandra Day O'Connor, recently expressed criticism of this well-accepted methodology, and in particular the concept of a "lodestar" calculation.  *Arbor Hill Concerned Citizens Neighborhood Assoc. v. County of Albany*, 484 F.3d 162, 169 (2d Cir. 2007).  The panel in *Arbor Hill* did not, however, completely abandon the Second Circuit's prior jurisprudence regarding fee awards, clarifying that a "presumptively reasonable fee" could still be viewed as a product of the time spent, billed at a reasonable hourly rate, defined as "a paying client would be willing to pay."  *Id.*

In this instance, by supplemental submission, plaintiffs' counsel has requested that he be compensated for a total of 63.15 hours, at a rate of $300 per hour.  *See* Dkt. No. 28.  Plaintiffs' submission, although not in affidavit form, is otherwise compliant with this circuit's general requirements for such applications.  *See New York State Ass'n for Retarded Children, Inc. v. Carey,* 711 F.2d 1136 (2d Cir. 1983).[15]  I conclude, however, based upon my knowledge of billing rates customarily

---

[15]    Defendant has not objected to plaintiffs' costs and fees request, either procedurally or on the merits.

charged by attorneys practicing within this district, and in the Syracuse, New York community, possessing the level of experience of the plaintiff's attorney an hourly rate of $250 is justified as representing that which a reasonably prudent client would be willing to pay for services of the type rendered.  Accordingly, finding the hours reflected in counsel's fee application as having been expended in pursuing the Does' claims to have been reasonable, when considering the nature of the action, the services rendered, and the result achieved, I will direct the inclusion in the resulting judgment of an award of attorneys' fees in the amount of $15,787.50.

> ### 2.     Costs

In addition to attorneys' fees, plaintiffs are also entitled to recover costs of the action under 18 U.S.C. § 2520(b)(3).  *See Abraham v. County of Greenville, S.C.*, 237 F.3d 386, 393 (4th Cir. 2001) (citing 18 U.S.C. § 2520(b)(3)).  In their application, plaintiffs have sought recovery of litigation costs in the amount of $402.86, comprised of the costs of photocopying ($6.50), postage ($1.67), computerized research ($289.69), and of obtaining a transcript of defendant's criminal trial ($105).

In this instance the itemization provided by the Does, as representing their out of pocket losses resulting from Kaiser's actions,

included the sum of $350.00, which was the cost of filing this action.  That

expenditure, however, was not included in counsel's application for

litigation costs.  Since such filing fees are recoverable under both 18

U.S.C. § 2520(b)(3) and Rule 54(d) of the Federal Rules of Civil

Procedure, as well as pursuant to 28 U.S.C. § 1920(1), *see DCH Auto*

*Group (USA) Inc. v. Fit You Best Auto, Inc.,* No. CV-05-2973, 2006 WL

279055, at *3-4 (E.D.N.Y. Jan. 10, 2006), I have included that amount in

the costs awarded.

As was previously noted, one of the prominent disbursement items

recovery of which is now sought concerns the expense of computerized

research.  Such costs, however, are typically treated by the courts as in

the nature of overhead expenses, to be compensated indirectly through

the recovery of attorneys' fees.  *See DCH Auto Group*, 2006 WL 279055,

at *3-4; *New York State Teamsters Conference Pension & Ret. Fund v.*

*United Parcel Serv., Inc.,* No. 5:98-CV-1902, 2004 WL 437474, at *6-7

(N.D.N.Y. Feb. 27, 2004) (Scullin, J.).  I have therefore excluded from the

costs to be awarded to the plaintiffs the expense of computerized

research.

Based upon the foregoing, I find that plaintiffs are entitled to an

award of litigation costs, in the sum of $463.17.

IV.    SUMMARY AND CONCLUSION

        Through his actions, which the court has previously found to have
been callous, outrageous, and repugnant under acceptable civilized
standards, defendant has caused the plaintiffs to undergo considerable
embarrassment, humiliation and anguish.  The devastating and persisting
effects of defendant's actions have been aggravated by the fact that the
plaintiffs are well-known, and have considerable family in the local
community; the fact that the defendants knew and trusted defendant
Kaiser; and the fact that the matter was investigated by two of plaintiff's
coworkers, who of necessity were afforded access to videotapes depicting
the plaintiffs' most private and intimate moments occurring in the privacy
of their home.  Under these circumstances, I find it appropriate to award
damages for mental anguish and emotional distress and plaintiffs' out-of-
pocket losses directly attributable to defendant's actions, as well as
punitive damages, litigation costs, and attorneys' fees, as outlined above.
Accordingly, it is therefore hereby

        ORDERED as follows:

        1)    Plaintiff John Doe is hereby awarded compensatory damages

31

for mental anguish and emotional distress, in the amount of $50,000, and additionally, punitive damages in the sum of $25,000.

2)    Plaintiff Jane Doe is hereby awarded the sum of $150,000 in compensatory damages, and an additional amount of $25,000 in punitive damages, against the defendant.

3)    Additionally, plaintiffs are further awarded additional actual damages in the amount of $462.00 representing the out-of-pocket losses associated with defendant's conduct, and further the sum of $16,250.67, representing litigation costs and reasonable attorneys' fees.

4)    The clerk is directed to enter judgment in plaintiffs' favor and against the defendant consistent with this decision and order.


Dated:    July 9, 2007
          Syracuse, NY

David E. Peebles
U.S. Magistrate Judge